Smith, Herman J., J.
I. INTRODUCTION
This matter is before the court on the motion of the plaintiff, Essex Insurance Company (“Essex Insurance”), for summary judgment where Essex Insurance contends it owes no duly to defend or indemnify David’s Floor Service (“David’s Floor”), a flooring service company, for any property damage and bodily injury caused by a fire at 4 Foskett Street in Somer-ville, Massachusetts (“Foskett job” or “Foskett property”). The fire occurred during a floor sanding and refinishing job that killed two people, severely injured two others, and resulted in extensive damage to the Foskett property and to a neighboring building. All of the defendants, David’s Floor Service, Inc., Muoi Bui a/k/a Muoi Pham, individually and as administrators of the estate of Toan Bui, Loan Vu, individually and as administratrix of the estate of Ha Vu, Nam Dao, Trung Le, Tim D. Stein, Wayne Rolf and Maria Krings (collectively “defendants”) have filed oppositions. For the reasons set forth below, Essex Insurance’s motion for summary judgment is DENIED.
II. BACKGROUND
The following facts are summarized in the light most favorable to the non-moving parties. In September 2004, Tim Stein and Wayne Rolf Fette, owners of a three-family building located at 4 Foskett Street in Somerville, Massachusetts, verbally[1] contracted with David’s Floor Service (“David’s Floor”) to sand and refinish the third floor and the stairways between the second and third floor at the Foskett property.[2] David’s Floor is a small flooring business that at the time was owned by Min dang, and his father David Dang.[3] Generally, Min Dang ran the business which included handling customer relations, estimates, and bookkeeping.
David’s Floors delegated the Foskett job to one of its crews, all of who, as claimed by Essex Insurance, were “employees” of David’s Floor. Essex Insurance asserts that Toan Bui was a field supervisor of one of these crews, and Ha VU, Nam Dao, and Trung Le were his assistants. It is disputed whether the members of the crew were employees of David’s Floor.
Toan Bui had worked with David’s Floors since 2001. David’s Floors dealt primarily with Bui. Bui received “65% of the total job” from which Bui was responsible for paying his assistants, providing needed transportation, tools, and other materials such as polyurethane and lacquer sealer. David’s Floor kept 35% of the gross contract price, and was responsible for advertising, customer relations and other business operating costs. Prior to the flooring job at the Foskett property, David’s Floor had not worked with Vu, Dao, or Le. Toan Bui selected them to work on the crew because Toan Bui worked with them or knew them from previous work.
Toan Bui asserts that he was a subcontractor to David’s Floor, and Le and Dao were employees of Bui and his company Bless Hardwood Floor. Toan Bui’s 2003 Individual Tax Return (Schedule C) lists Nam Dao and Trung Le as business expenses for Bless Hardwood Floor. Toan Bui paid Le and Dao on a regular basis, provided them with materials and tools, and transported them to and from any contracted job. Bui asserts that Ha Vu was a fellow worker. However, Ha Vu asserts that he was an employee of Toan Bui and Bless Hardwood Floors. Trung Le and Nam Dao have submitted affidavits asserting they were not employees of David’s Floors, and that they worked for Toan Bui.
Toan Bui also points to an insurance application dated December 12,2003 and filed with Essex Insurance which states David’s Floors annual payroll as $10,400.00, and its number of employees as two. Further, Toan Bui points to a fax to Essex’s insurance broker, X/S Brokers Insurance Agency (“X/S Brokers”), which indicates that David’s Floor did not have any employees.[4]
1. Safety Procedures
Min Dang and David Dang periodically discussed safety issues with their crews. The lacquer sealer[5] was a particularly flammable product used in the finishing *327 process, and David’s Floors had prior fires[6] involving the Harco brand of the lacquer sealer. Min Dang called Toan Bui on a weekly basis to assign him jobs for the following week. In these conversations, Min Dang asserted that at least once a month he reminded Toan Bui of safety issues such as opening the windows, turning off the pilot lights, and unplugging all electrical devices. David Dang also asserted that he regularly spoke with Toan Bui about safety precautions.
David’s Floors also created and regularly modified a safety document called “David’s Floor Service, Inc. Fire and Health Safety Provisions” (“David’s Safety Policy” or “Safety Policy”). The document was printed in English and Vietnamese. During the pay period, sometimes Toan Bui and his assistants would come in and discuss David’s Safety Policy with Min Dang. David Dang had the Safely Policy memorized and asserted that he gave a copy of the document to Toan Bui prior to the Foskett property job. In turn, Toan Bui was responsible for distributing the document to his team, and closely supervising the others’ work and compliance with the safety standards. Min Dang stated that he would visit about a quarter of the job sites especially when the job was complicated, “like installation or repair, stuff like that, or if there’s — if we know that there’s a gas stove with a pilot and not an electrical starter or something like that.” Min Dang did not visit the Foskett property job.
In some respects, David’s Safety Policy differed from the warnings on the Harco lacquer sealer used at the Foskett property. The warnings on the can of sealer listed more detailed restrictions than were included in David’s Safety Policy. David Dang explained that he verbally explained the additional warnings instead of including them in the Safety Policy. However, the defendants have pointed out that the warnings and Safety Policy conflicted with each other. The warnings on the Harco lacquer sealer[7] indicated that the sealer should be applied at the rate of one gallon per each 600 square feet,[8] yet David Dang asserted that workers were instructed to apply the sealer at a rate of one gallon per each 250 square feet. Also, the warnings on the can of sealer suggested allowing two hours drying time before applying a finish coat whereas Min Dang required only 45 minutes.[9]
Min Dang arranged the job at the Foskett property. It is unclear whether he spoke, about appliances, electric sources or any safety precautions with Tim Stein, his contact for the Foskett job. He explained that if Mr. Stein had any questions he could talk to him or Toan Bui even though it is also unclear whether Mr. Stein was ever told that Bui was an appropriate contact person. Tim Stein stated that no one spoke to him about any safety precautions or about anything that needed to be done to prepare the area prior to the flooring job.
David Dang explained that David’s Floors always spoke with homeowners regarding safety, terminating pilot lights, the flammable nature of Harco lacquer sealer, and other safety concerns. In fact, David’s Floors would try to limit the use of the Harco sealer, as did other companies in the flooring business, and would advise using the Harco sealer mixed with “poly.” The mixed sealer called “poly sealer" was less flammable but the downside was that it dried very slowly. David Dang asserted that they only used the Harco lacquer sealer when a homeowner requested such a product. There is a question of whether Mr. Stein was given the option of using the poly sealer instead of the Harco. Harco lacquer sealer was used at the Foskett property.
Wayne Fette also did not speak with anyone about any safety precautions. He did note that the gas pilots to the 3rd-floor kitchen stove and 3rd-floor heating/air-conditioning unit were on the day before the fire.
2. The Fire
On September 2, 2004, Toan Bui, Ha Vu, Nam Dao, and Trung Le began working at the Foskett property. Vu and Le were the first to arrive at the site. Wayne Fette met them and directed them to the work area. Because Vu and Le spoke veiy little, if any English, Mr. Fette did not discuss any safety precautions with them. Dao and Bui were working at another site and joined Vu and Le later in the morning. After 12:00 PM, Vu and Bui began to apply the first coat of lacquer sealer to the 3rd floor. Le and Dao were preparing the staircase to be coated and were on the landing below the 3rd floor. Around 12:45, a fire broke out on the 3rd floor. Le and Dao ran down the staircase and exited the building. They were both badly burned. Le suffered second- and third-degree bums to his left arm and back. Dao suffered severe second- and third-degree bums to his back, chest, face, neck, both arms and legs.
Vu exited the building a little after Le and Dao. Ninety percent of his body was burned, and he died the next day. Bui did not exit, and his body was found in the building the next day. Min Dang was not at the site. He had expected to go to the property that day but did not make it there before the fire broke out. Min Dang indicated there was a need to complete the job quickly, and he was going to check on the progress of the job. [10]
The State Fire Marshall/State Police prepared a report of the fire and concluded that the cause of the fire was accidental:
[T]he cause of this fire is accidental, occurring from the accidental ignition of chemical vapors produced during the hardwood floor finishing process. The exact cause of ignition remains undetermined, but I believe that it was most probably initiated by these vapors reaching the gas pilot on the third floor kitchen stove and ultimately, due to the failure of the workers to properly extinguish the gas pilot. However, as stated other sources of ignition were present to include the refrigerator’s compressor and electrical lights.
The report also noted that while the workers were all identified as smokers, Nam Dao stated that the work *328 ers “never smoked in the buildings when working.” The day of the fire, Wayne Fette was painting in the rear stairwell of the building. He had checked on the workers on two occasions and did not see anyone smoking. He did hear the smoke detectors sounding several times in the morning but thought the alerts were caused by the dust from the sanding.
The Foskett property was demolished due to the extensive damage caused by the fire. Also, the heat from the fire melted the aluminum siding on the abutting property at 8 Foskett Street.
The Federal Occupational Safety and Health Administration (“OSHA”) investigated the fire and issued numerous safety violations to David’s Floors on the presumption that David’s was the direct employer of Bui, Vu, Le, and Dao.
3. Workers’ Compensation
After the fire, David’s Floors submitted certain reports to the Department of Industrial Accidents (“DIA”) where it identified Le, Dao, Vu, and Bui as its employees. In turn, Toan Bui submitted an Employee’s Claim form to the DIA where he identified his employer as Bless Hardwood Floors. The insurer denied compensation to Bui under G.L.c. 152, §18 because it considered Bui to be self-employed. On the other hand, Trung Le, Nam Dao, and Ha Vu received workers’ compensation benefits through David’s Floor pursuant to G.L.c. 152, §18 because Toan Bui was uninsured for workers’ compensation coverage.
4. Insurance Policy
From December 12, 2003 to December 12, 2004, David’s Floors was insured pursuant to commercial general liability policy, No. 3CM377S, issued by Essex Insurance (“insurance policy”). The insurance policy was issued through XS Brokers Insurance Agency, Inc., the wholesale broker (“XS Brokers”), to Metro Insurance Agency, Inc., the retail broker (“Metro”). Metro delivered the policy to David’s Floors.
As such, David’s Floors asserts that Essex Insurance must indemnify it for the claims of bodily injuiy brought by or on behalf of Toan Bui, Trung Le, Nam Dao, and Ha Vu. Also, that Essex Insurance must defend and indemnify David’s Floors, David Dang, and Min Dang for cross claims brought by Trung Le, Nam Dao, and the estate of Toan Bui. David’s Floors also asserts that Essex Insurance must defend and indemnify it for claims of property damage to the Foskett property and the abutting property at 8 Foskett Street. In turn, Essex Insurance has brought this declaratory action asserting that it has no duty to defend or indemnify David’s Floors, David Dang, or Min Dang for any claims arising out of the fire at the Foskett property.
During discovery, a dispute arose about whether the insurance policy included an endorsement titled the “combination general endorsement.” Ha Vu, through his attorney, subpoenaed the two insurance brokers, XS Brokers and Metro, for all documents related to the insurance policy. Both brokers responded to the subpoenas and produced their copies of the insurance policy that did not include the combination general endorsement. In one affidavit, dated May 16, 2006, Min Dang stated the combination general endorsement was not included in his copy of the insurance policy. In a later affidavit, Min Dang stated he had found the previously missing combination general endorsement. Min Dang also made other conflicting statements about whether he received the combination general endorsement as part of his insurance policy. In response, Essex Insurance asserted that an employee of XS Brokers included the disputed endorsement in the insurance policy sent to Metro and the Vice President of XS Brokers submitted an affidavit in support.
The defendants also point out that the version of the combination general endorsement attached to Essex’s Complaint is not marked similarly as the other endorsements in the insurance policy. For example, that version of the disputed endorsement does not reference the policy number, effective date, and the company to whom the endorsement is issued as do the other endorsements attached to the insurance policy. Essex Insurance points to another version of the endorsement which was not attached to the original complaint and has the appropriate policy number and effective date.
III. DISCUSSION
Summary judgment should be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Id. at 17. The court will interpret all inferences in the light most favorable to the non-moving party. Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 438 (1995).
Essex Insurance points to several exclusions and an endorsement in the insurance policy to contend it owes no duty to defend or indemnify David’s Floors for the bodily injury claims of the workers and property damage claims of the owners of the Foskett property and the owner of the abutting property. It is well settled that Essex Insurance “owes a broad duty to defend its insured against any claims that create a potential for indemnity . . . That some, or even many, of the underlying claims may fall outside the coverage does not excuse [the insurer] from its duty to defend these actions.” Simplex Technologies, Inc. v. Liberty Mut. Ins. Co., 429 Mass. 196, 199 (1999).
*329 As to the insurance policy, it is interpreted no differently than any other contract, and the words of the policy are construed “in their usual and ordinary sense.” Hakim v. Massachusetts Insurer’s Insolvency Fund, 424 Mass. 275, 280 (1997) (“We read the policy as written and are not free to revise it or change the order of the words”) (citations and quotations omitted). “If there are two rational interpretations of policy language, the insured is entitled to the benefit of the one that is more favorable to it... It is also appropriate, in construing an insurance policy, to consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered.” Hazen Paper Co. v. United States Fid. & Guar. Co., 407 Mass. 689, 700 (1990) (citations omitted). “(E]xclusions are to be read literally, without poetic license — they are to be strictly construed.” Great Southwest Fire Ins. Co. v. Hercules Building & Wrecking Co., 35 Mass.App.Ct. 298, 302-03. Further, the party relying on the exclusion bears the burden of proving the exclusion applies. Id.
1. Workers’ Compensation Exclusion
Exclusion 2d, in Section I — Coverages, Coverage A Bodily Injuiy and Property Damage Liability (“workers’ compensation exclusion”) provides that the insurance policy does not apply to “any obligation of the insured under a workers’ compensation, disability benefits or unemployment compensation law or any similar law.” Essex Insurance argues that this exclusion precludes coverage for the bodily injuiy claims of Le, Vu, Dao, and Bui. As to Le, Vu, and Dao, Essex seems to argue that, because they were employees and received workers’ compensation benefits, they are precluded from pressing for any claims arising out of any bodily injury. As to Bui, they argue that if Bui is an employee, regardless of whether he received benefits, he is precluded from pressing any bodily injuiy claims.
However, the defendants have offered ample evidence that puts into dispute whether Le, Vu, Dao, and Bui were employees of David’s Floors. First, David’s Floors arranged jobs with Bui and had veiy limited, if any contact with Le, Vu, and Dao. In his deposition, Min Dang stated that David’s Floors paid Bui a certain percentage of each job, and Bui took care of selecting the other workers, paying them, and providing transportation and work materials. In fact, David’s Floors had not worked with Le, Vu, and Dao prior to the Foskettjob. Second, in affidavits, Le and Dao asserted that they were employees of Bui. Vu also contests that he was an employee of David’s Floors. Third, other official correspondence and documents such as Bui’s 2003 tax return and David’s Floors insurance filings suggest that Le, Vu, and Dao were not employees of David’s Floors. Bui’s 2003 Tax Return states his principal business as sanding floors and the name of his business as Bless’s Hardwood Floor. The tax return also lists Nam Dao and Trung Le as business expenses. Fourth, the fact that David’s Floors identified Le, Vu, Dao, and Bui as employees is not competent, admissible evidence that David’s Floors employed them. Finally, Le, Vu, and Dao received workers’ compensation benefits pursuant to G.L.c. 152, §18 which requires a general contractor to pay the employees of an uninsured subcontractor.
Moreover, because Le, Vu, and Dao received workers’ compensation benefits through G.L.c. 152, §18 they are not precluded from pursuing common-law claims for their personal injuries from persons other than their employer. A general contractor who pays workers’ compensation benefits to an uninsured subcontractor’s employee pursuant to G.L.c. 152, §18 is not the immediate employer, and so is not released from common-law negligence claims brought by the injured employee.[11]
Any common-law claims for bodily injury are not derived from any obligation under the workers’ compensation statute. Great Southwest Fire Ins. Co. v. Hercules Building & Wrecking Co., 35 Mass.App.Ct. at 306. In Great Southwest Fire, the SJC decided that a similar workers’ compensation exclusion precluded coverage for an employer[12] failing to secure and maintain workers’ compensation insurance because the nature of that obligation “was so far derived from, and integral to, the workers’ compensation statute that it fell within [the] exclusion,” but declined to apply the exclusion to a claim that the employer failed to use reasonable care in furnishing a safe workplace. Id. at 306 (“duly to use reasonable care to furnish a safe workplace ... is a common law (nonstatutoiy) duty and is not.. . ‘an obligation for which the insured . . . may be held liable under any workmen’s compensation .. . law[1] ”). Id. at 306.
Thus, if Bui, Le, Vu, and Dao are not employees of David’s Floors, the workers’ compensation exclusion does not apply to any common-law claims that they can assert. Therefore there is a genuine issue of material fact in dispute, and summary judgment in inappropriate.
2. Combination General Endorsement
The Combination General Endorsement provides in pertinent part:
1. This insurance does not apply to any claim, suit, cost or expense arising out of “bodily injuiy” to
(1) any employee of a Named Insured arising out of and in the course of employment or while performing duties related to the conduct of the insured’s business or
(2) the spouse, child, parent, brother, sister or relative of that employee as a consequence of (1).
This exclusion applies whether an insured may be liable as an employer or in any other capacity, and/or to any obligation to share damages with or repay someone else who must pay damages because of the injuiy, as well as liability assumed under any “Insured Contract.”
Wherever the word “employee” appears above, it shall also mean any member, associate, leased worker, temporary worker or any person or persons *330 loaned to or volunteering services to you. (“Employee endorsement”)
****
8. If you are a contractor, builder or developer, there is no coverage under this policy for:
(1) “Bodily injury,” “personal injury” or “property damage” caused by acts of independent contractors/subcontractors contracted by you or on your behalf unless you obtain Certificates of Insurance from them providing evidence of at least like coverage and limits of liability as provided by this policy and naming you as an additional insured.
(2) “Bodily injury,” “personal injury” or “property damage” sustained by any independent contractor/subcontractor, or any employee, leased worker, temporary or volunteer help of same, unless a Named Insured or employee of a Named Insured is on site, at the time of the injury or damage, and the Named Insured’s actions or inactions are the direct cause of the injury or damage, or the injury or damage is directly caused by an employee of the Named Insured. (“Contractor’s endorsement”)
Here again, the defendants have advanced sufficient evidence to demonstrate the existence of disputed material facts. Thus, summaryjudgment is inappropriate. For example, the defendants’ submissions clearly raise a question about whether this endorsement was part of the insurance policy delivered to David’s Floors. The insurance policy attached to Essex’s complaint has numerous exclusions and endorsements each of which has information identifying the policy number, the effective date of endorsement, and the name of the insured party. This endorsement did not have such identifying information. Similarly, the two insurance brokers, XS Brokers and Metro, did not have a record of the endorsement being included in the policy. Min Dang initially asserted in an affidavit and in other statements that he did not receive the endorsement. In a later affidavit, he asserted he located the endorsement. While newly acquired evidence, here the missing endorsement, can support anew conflicting affidavit without creating an issue of fact, here there are other statements that taken together create a genuine dispute over whether the endorsement was part of the delivered insurance policy. While Essex Insurance has put forth evidence contending that the insurance policy included the endorsement, at this stage all facts are viewed in a light favorable to the nonmoving party. Consequently this Court will not grant summary judgment as there are material disputed facts.[13]
In addition, as discussed above, it is disputed whether any of the workers were employees of David’s Floors. Essex Insurance’s policy has a very broad definition of employee. Consequently, there are facts in dispute as to whether the employee’s endorsement would apply to Bui, Le, Vu, and Dao.[14] The question of who was an employee is also relevant to the second part of the contractor’s endorsement, which provides coverage for injury or damage if the insured was on site and the insured’s “actions or inactions are the direct cause of the injury or damage,” or if an employee of the insured was on site and “directly caused” the injury or damage. For example, if Bui is found to be an employee of David’s Floors and his actions are found to have directly caused the fire, then the injury to the other workers and damage to the property may be covered by the insurance policy.
If Bui is not an employee but a subcontractor, then the first part of the contractor’s endorsement provides coverage for injury and damage “caused by acts of independent contractors/subcontractors” if the contractor gets certificates of insurance. While David’s Floors did not get certificates of insurance from any of the workers, it is not clear whether the injuries and damage was “caused by acts of independent contractors/subcontractors.” Since exclusions are read strictly, if the fire was caused by acts of the insured then coverage would not be excluded by this provision.
Finally, who caused the fire at the Foskett property is a clearly disputed material fact. See Corsetti v. Stone, 396 Mass. 1 (1985). While the State Fire Marshal/State Police report concluded the fire was accidental, it stated the fire was “most probably initiated by [chemical] vapors reaching the gas pilot on the third floor stove and ultimately, due to the failure of the workers to properly extinguish the gas pilot.” The facts are disputed as to who was responsible for ensuring that the gas pilot and other such ignition sources were handled properly and whether other measures in keeping the workplace safe were taken in an appropriate and responsible manner. For example, Le and Dao were in the process of cleaning dust from the staircase below when the fire broke out. It would be difficult to argue that their actions caused the fire to break out at the Foskett property. Whether it was Min Dang, David Dang, David’s Floors,[15] Toan Bui or the collective responsibility of the workers is a question of fact.
The opposing parties have put forth evidence arguing that David’s Floors and its executive officers retained control over the safety precautions and programs in connection with the work at Foskett property and that they did not exercise reasonable care in that the safety precautions used by David’s Floors differed from those recommended by the sealing product; that not all of the workers were properly trained in the safety policy; that the workers spoke very little English and probably could not read the warnings on the sealing product; that contrary to usual practice David’s Floors did not discuss safety issues with the homeowners and follow certain internal safety procedures; that David’s Floors failed to check ignition sources at the Foskett property; that the work area was not properly ventilated; and, that David’s Floors was aware of the flammable nature of the sealing product and did not take appropriate steps in limiting its use. See Corsetti, 396 Mass. at 9-11 (“One who *331 entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care” (citations and quotations omitted)). Whether David’s Floors ultimately caused the fire or the workers caused the fire, who may or not be employees, will determine insurance coverage.
3. Workmanship Exclusions
Exclusion 2j, in Section I — Coverages, Coverage A Bodily Injury and Property Damage Liability provides that the insurance policy does not apply to:
(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the “property damage” arises out of those operations; (“Workmanship Exclusion (5)”) or
(6) That particular part of any property that must be restored, repaired, or replaced because “your work” was incorrectly performed on it. (“Faulty Workmanship Exclusion (6)”).
Essex Insurance argues that Workmanship Exclusion (5) precludes coverage for any damage to the Foskett property, in that the work done by the insured and/or the insured’s subcontractors “necessarily involved the entire structure of the home as the very nature of the work involved the safe handling of flammable and combustible materials ...”
The completed work in this case would have consisted of sanded and refinished floors in the third-floor unit and the adjoining stairways. This work product did not involve any sanding and refinishing of the floors in the first- or second-floor units nor did it include any other part of the structure of the Foskett property. To suggest that because their work involved flammable and combustible materials, it involved the entire structure of the house is untenable. Contrast Donovan v. Commercial Union Ins. Co., 44 Mass.App.Ct. 596, 599-600 (faulty workmanship exclusion controlled because “the faulty workmanship damaged directly the very property which had to be replaced”; the subcontractor constructed a wall which was later found defective through bulging and buckling; insured applied to insurer to cover the dismantling and replacement of the wall).
Second, David’s Floors and Bless Hardwood Floors (as the respective names suggest) were in the business of sanding and refinishing hardwood floors. Their business was limited to a particular part of the property, namely the room and hallway floors, and did not involve working on anything other than that part of the property. Contrast Commerce Ins. Co. v. Betty Caplette Builders, Inc., 420 Mass. 87, 87-89 (1995) (where insurance policy excluded coverage for property damage to insured’s products and insured was in the business purchasing house lots and building houses on them for sale, it was held that the policy excluded coverage for damage to houses as a result of defective septic systems designed and installed by subcontractors), and Jet Line Services, Inc. v. American Employers Ins. Co., 404 Mass. 706, 711-12 (1989) (workmanship exclusion precluded coverage for replacing a underground tank, when work on the bottom of a underground tank caused an explosion, because “particular part of any property... on which operations are being performed” language referred to the entire tank and not just the bottom of the tank and where insured was in the business of cleaning large petroleum storage tanks. However, court found coverage for other reasons).
Additionally, Essex Insurance has not cited any case law that supports its position. Essex points to a North Dakota case, Grinnell Mut Reinsurance Co. v. Lynne, 686 N.W.2d 118 (Sup.Ct.N.D. Aug. 31, 2004), that is inappo-site and not persuasive to this Court (court held that coverage for damage to the walls of a house was excluded by a faulty workmanship exclusion where work involved raising the house from its foundation and constructing a new foundation). If anything, Grinnell is a factually stronger case than the instant one because there the work on the house in Grinnell, constructing the foundation, involved raising the house and directly affected the whole house, whereas the work at the Foskett property was limited to the third-floor area. Moreover, in a factually similar Massachusetts case, the Appeals Court found coverage despite a workmanship exclusion, for damage to the superstructure of a house where the work involved moving the house and a contractor negligently constructed a new concrete foundation. Frankel v. J. Watson Co.; Hartford Fire Ins. Co., 21 Mass.App.Ct. 43 (1985). The court reasoned that the “particular part of any property”[16] language in the exclusion limited the scope of the exclusion to the foundation of the house, and not the superstructure, despite the fact the house had to be moved to an alternate site when the new foundation was constructed. Id. at 46.
Finally, “a provision in an insurance policy that negates the veiy coverage that the policy purports to provide in the circumstances where the person is liable is void as against public policy.” Liberty Mut Ins. Co. v. Tabor, 407 Mass. 354, 358. In a comprehensive general liability insurance policy, “[t]he risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable.” Betty Caplette Builders, Inc., 420 Mass. at 91 (quotations and citations omitted). If we agreed with Essex Insurance and found that Workmanship Exclusion (5) precluded coverage for the damage to the Foskett property we would negate the veiy coverage the policy purports to provide.
Similarly, the faulty Workmanship Exclusion (6) does not nullify coverage for damage to the Foskett property. Essex Insurance argues that this exclusion precludes coverage for “not only damage to the *332 insured’s precise work product, but also for damage to other parts of the property directly caused by the faulty work product.” However, the language of the exclusion nullifies coverage for restoring, repairing, or replacing property because work was done incorrectly on “it." The “it,” read in a usual and ordinary sense, would refer to the property worked on, which as discussed above, was the flooring in the third-floor area. Further, as discussed above, Essex Insurance’s broad reading of the exclusion would render the coverage provided by the insurance policy illusory.
Finally, Essex Insurance’s reliance on Bond Bros., Inc. and Lusalon is unavailing. In Bonds Bros., Inc. v. Robinson; American Ins. Co., 393 Mass. 546 (1984), all parties conceded that the faulty workmanship exclusion explicitly nullified coverage for property damage to the subcontractor’s work product. There, the rebar work (installation of reinforced steel and welded wire mesh) caused the failure of the concrete foundation poured by the general contractor. The question there was whether another exclusion in the policy limited the faulty workmanship exclusion, not whether the damaged property outside of the work product was covered by the exclusion. Id. at 548.
In Lusalon, Inc. v. Harford Accident & Indemnity Co., 400 Mass. 767 (1987), a masomy subcontractor, while installing a concrete masomy block and other such products, accidentally spattered mortar on the adjacent door and window frames. The subcontractor cleaned the frames but did not fully remove the cleaning fluid which subsequently caused damage to the door and window frames. Here, again the subcontractor was asking for coverage for his work product. “It is not unexpected that mortar will splash on doors and windows in the course of mortaring them in, and barring contract language to the contrary, we think it stands to reason that it will be a part of the masonry subcontractor’s work to clean up the splash.” Lusalon, Inc., 400 Mass. at 770 n.4 (citations and quotations omitted).
The workmanship exclusions do not nullify coverage for damage to the Foskett property and to the abutting properly at 8 Foskett Street.[17]
IV. ORDER
For the foregoing reasons, it is ORDERED that plaintiff Essex Insurance’s Motion For Summary Judgment is DENIED.

Tim Stein contacted Min Dang by phone. They spoke on several occasions. They did not exchange any written proposals or contracts.

The building was divided into three units. The first unit was all of the first floor and part of the second floor. The remaining part of the second floor was the second-floor unit, and the third floor was a third unit. The units were rented to different tenants. The tenants on the third floor had moved out a week or two before the flooring job by David’s Floors.

As of 2005 it seems that Min Dang owns the company.

Nile fax from Essex Insurance asked for X/S Brokers to confirm, “Please confirm- ins’d operates alone with no employees. If he has employees that payroll needs to be added-This is the reason we prefer to do on Gross Sales- don’t have to be concerned w/# of employees. Hard to see how he could work alone. Overall 10% increase- if possible.” (sic)

After sanding, the floor is vacuumed and the primer coat, lacquer sealer, is put on the floor. After waiting for a period, a coat of polyurethane is put on the floor and after 24 hours, another coat of polyurethane.

In 2003, during a floor sanding and refinishing job with another crew, the lacquer sealer ignited and caused a fire. One person was injured. In 1998, there was a fire in Cambridge. A report prepared by an expert witness concluded that (1) the origin of the fire was the wood floor refinished by David’s Floors and another company, and that (2) David’s Floors and the other company had failed to properly vent the vapors from the floor refinishing product and there were numerous ignition sources in the work area.

It is unclear whether the workers used Harco lacquer sealer #1047 or #760.

The warnings on the Harco lacquer sealer (#1047) read in pertinent part, “Material cannot be thinned and therefore a coverage rate of600 sq. ft. per gallon should be established.”

The warnings on the Harco lacquer sealer (#1047) read in pertinent part, “Apply final coat of LACQUER SEALER directly from container using applicator, roller or brush. Use only one coat of LACQUER SEALER. LACQUER SEALER will dry dust-free in 45 minutes. Allow two hours drying time before applying finish coat.”

He was going to the site to check on “how far along the job was because I guess they wanted it to be completed . . . in two or three days.”

See Larson v. Fred Salvucci Corp., Civil No. 03-3226 (Middlesex Super.Ct. Sept. 14, 2004) [18 Mass. L. Rptr. 247] (Gants, J.) (In a well-reasoned decision, Judge Gants gave five reasons why an employee of a subcontractor could pursue a common-law negligence action against the general contractor, even when the general contractor paid the workers’ compensation benefits).

The claims in Great Southwest Fire were directed against the immediate employer of the injured employee.

The opposing parties also note that the Combination General Endorsement includes a pollution exclusion that nullifies a series of provisions in the insurance policy that would specifically provide coverage for a fire. They argue that because the endorsement was not part of the insurance policy, the pollution exclusion is not applicable, and the insurance policy explicitly provides coverage. Because Essex Insurance does not argue that the pollution exclusion in the disputed endorsement applies, we need not consider this issue.

Since David’s Floors could be considered a contractor, the contractor’s endorsement may supersede the employee’s endorsement.

Min Dang and David Dang as executive officers of David’s Floors can be liable apart from David’s Floors. So, for example Min Dang could have coverage even if David’s Floors does not. See Great Southwest Fire Ins. Co., 35 Mass.App.Ct. at 307.

The exclusion in that case precluded coverage for “(d) that particular part of any property, not on premises owned by or rented to the insured,. . . (iii) the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured.”

Essex Insurance does not seem to argue liability for damage to the abutting property at 8 Foskett Street. Nevertheless, this decision makes clear that Essex is liable for that property damage.