U.S. UNDERWRITERS INSURANCE COMPANY, Plaintiff,

v.

Rachel LANDAU, Mordechi Landau, Vintaje General Construction Inc., Edna Deveaux, Public Administrator of Kings County, as administrator of the Estate of Julius Drecketts, Ranjette Combs, Bernard Barham, Allstate Insurance Company a/s/o Miguel Medrano and Vincent Alexis, Greenwich Insurance Company a/s/o Rachel Landau, Defendants.

Rachel Landau and Mordechi Landau, Third–Party Plaintiffs,

v.

Secure Insure Brokerage Inc. d/b/a Insuresecure Brokerage Inc., and Leon G. Silver & Associates, Ltd., Third–Party Defendants.

No. 05–CV–2049 (ENV)(SMG).

United States District Court, E.D. New York.

Jan. 19, 2010.

Steven Verveniotis, Adam I. Kleinberg, Michael Anthony Miranda, Miranda Sokoloff Sambursky Slone Verveniotis LLP, Mineola, NY, for Plaintiff.

Robert E. Michael, Robert E. Michael & Associates PLLC, Steven Glen Schiesel, Pecoraro & Schiesel, Paul A. Marber, The Cochran Firm, William G. Hanft, Gennet Kallmann Antin & Robinson, PC, New York, NY, Stuart D. Markowitz, Law Of-

fices of Stuart D. Markowitz, P.C., Jericho, NY, for Defendants/Third–Party Plaintiffs.

Scott C. Perez, Fiedelman Garfinkel & Lesman, Heidi M. Weiss, Jacobwitz, Garfinkel & Lesman, Jeannie Valentine, Jonathan B. Bruno, Kaufman, Borgeest & Ryan LLP, New York, NY, for Third–Party Defendants.

## MEMORANDUM AND ORDER

VITALIANO, District Judge.

Plaintiff U.S. Underwriters Insurance Company ("USU") entered into a contract for premises liability insurance with defendant Rachel Landau. USU brings this action for declaratory judgment pursuant to 28 U.S.C. §§ 1332 and 2201, seeking to disclaim coverage for any liability arising out of Landau's ownership of a building which suffered a major fire that fatally injured one of its tenants and caused physical damage to neighboring property. Contending the liability coverage was properly disclaimed based on the failure of the insured to provide timely notice of the occurrence as well as the separate application of a policy exclusion for work done by independent contractors, plaintiff now moves for summary judgment.[1] Defendants oppose the motion on a plethora of grounds, including that: (1) a declaratory judgment binding all defendants would be premature; (2) the independent contractors exclusion is invalid and does not apply; and (3) USU failed to timely disclaim coverage. Collaterally, third party defendants wholesale broker Leon G. Silver & Associates ("Silver Associates") and retail broker Secure Insure Brokerage, Inc. ("SIB") move for summary judgment dismissing Landau's third party negligence claims alleging damages arising out of late notice of the incident to USU.

### Background

The relevant facts are drawn from the amended complaint and the submissions of the parties on the motions for summary judgment, and are reviewed in the light most favorable to the nonmoving parties. *See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.,* 473 F.3d 450, 456 (2d Cir.2007) ("In assessing the record . . . the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.") (quoting *Stern v. Trs. of Columbia Univ.,* 131 F.3d 305, 312 (2d Cir.1997)). Any relevant disputes as to fact are noted.

1. *The Premises and Its Insurance Coverage*

Rachel Landau acquired the three-story residential property at 94 Harman Street, Brooklyn in April 2003. Although Landau sought both first-party damage and third-party liability coverage, she did not directly approach potential insurers. Instead, Mordechi, her husband and the site's property manager, sought coverage through Moishe Weinstock, president of retail broker SIB. Weinstock, in turn, solicited coverage from wholesale broker Silver Associates, who pitched liability policies on behalf of a variety of insurers, including Greenwich Insurance and USU. Once Silver Associates determined that

---

1. USU also seeks a default judgment against defendants Vintaje General Construction, Inc. ("Vintaje") and Bernard Barham. The Court denies this branch of USU's motion as procedurally defective. USU is, however, granted leave to move for a default judgment pursuant to Federal Rule of Civil Procedure 55, and in accordance with Rules 55.1 and 55.2 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York. In any event, any claims against these defendants, or against defendant Ranjette Combs, who has also failed to file an answer, will, given their nature, be considered at the time a final judgment is entered.

Greenwich and USU had the best policies for the Landaus, it sent applications to SIB, which filled them out, had them signed by the Landaus, and faxed them back to Silver Associates to bind coverage. At virtually all times, Silver Associates was the only party in direct communication with the insurance underwriters themselves; the Landaus were insulated from Greenwich and USU by no less than two "middleman" brokers: SIB and Silver Associates.

Silver Associates, of course, dealt with and received commissions from many different insurance companies. However, in the course of its business, Silver Associates executed an "Agency and Brokerage Agreement" with USU whereby it had the authority to receive and accept proposals for insurance and collect premiums. Pursuant to this agreement, Silver Associates was bound to forward to USU daily underwriting reports and make available to USU any records generated as a result of the parties' relationship. Section 1.6 of the agreement provided further that Silver Associates "shall report all losses and claims to the Company [USU] immediately after receipt by the Agent [Silver Associates] of notice of the loss or claim." (Affirmation of Andrew M. Bernstein ("Bernstein Aff.") Ex. T.)

The Landaus ultimately secured from Greenwich policy # PWK009534 and its renewal, which together underwrote the premises for property damage during the period May 24, 2003 to May 24, 2005. The Landaus also obtained from USU policy # CL3063526 and its renewal # CL3063526A, which provided third party liability coverage for the same policy period. Section IV(2) of the USU policy sets forth the insured's obligation to notify the insurer in the event of an incident potentially giving rise to liability: "You must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim." [2] (Declaration of Steven Verveniotis ("Verv. Decl.") Ex. 1.) The provision went on to require that "[i]f a claim or 'suit' is brought against any insured, you must ... see to it that we receive written notice of the claim or 'suit' as soon as practicable." (*Id.*) The Landaus' policy also included an endorsement titled "Independent Contractors Exclusion" that purported to deny coverage for injury or damage "arising out of operations performed for any insured by independent contractors or acts or omissions of any insured by independent contractors or acts or omissions of any insured in connection with their general supervision of such operations." (*Id.*)

## 2. The Accident at 94 Harman Street

In June 2004, the Landaus hired Vintaje Construction Company to renovate the first floor of the insured premises. On the evening of June 14, 2004, Bernard Barham, a plumber hired by Vintaje to modify the building's plumbing and gas lines, were working in the basement when a gas leak developed from a pipe that was left uncapped. Although Barham allegedly became aware of this leak prior to stopping work for the night, he left the building without fixing the problem. The following morning, one of the tenants, Julius Drecketts, lit his stove, igniting gas which had by then flooded the building. The ignition sparked a conflagration that fatally wounded Drecketts and destroyed the premises. Barham was subsequently indicted by a grand jury in Kings County and pled

---

**2.** It is undisputed that the fire and explosion here constituted an "occurrence" within the meaning of the policies.

guilty to the criminally negligent homicide of Drecketts.

Mordechi Landau learned of the fire the morning it happened. He immediately went to the location, calling to inform Weinstock of the news along the way. When Landau arrived, he saw the substantial destruction caused by the explosion and learned from the fire department that an ambulance had taken one of the tenants to the hospital with injuries. Although the happening and/or substance of later conversations between the two about the fire are hotly contested, Landau believed that Weinstock had accepted responsibility for any actions required of the insured to perfect coverage, including satisfying the notice requirements in the policies. Weinstock did contact an adjusting firm, Superior Adjusting, on behalf of the Landaus, but after that did not consider himself to be handling the claim in any way. When Silver Associates initially learned of the fire—presumably from Superior Adjusting[3]—it provided Weinstock with an "Acord" form to fill out to provide written notice. Weinstock contends that he sent the Acord form to Superior Adjusting, who then filled out the substantive details and sent it back to Weinstock.

On June 16, 2004, SIB faxed the Acord form to Silver Associates, describing it on the fax cover sheet as a "property loss notice". (Verv. Decl. Ex. 25.) The form listed Greenwich as the "company" and included the Landaus' Greenwich policy number, but did not include any reference to the USU policy or liability coverage generally. (*Id.*) The form also listed the "loss" as an "explosion", with handwritten notes stating "fire erupted in basement". After receiving this form, Silver Associates passed on notice of the incident to a receiving agent of Greenwich, but did not contact USU or any liability insurer regarding the incident.

### 3. *USU's Investigation*

USU was not directly contacted until it learned of a claim against the Landaus by Allstate Insurance Company, the subrogee of owners of a neighboring property that was damaged by the fire. On September 29, 2004, Allstate wrote a letter to SIB asserting that "your insured," *i.e.* the Landaus, were responsible for the neighbors' losses. (Verv. Decl. Ex. 27.) These claims were conveyed to USU on October 14, 2004, in the form of an Acord titled "General Liability Notice of Occurrence/Claim." This Acord specifically listed "United States Liability" as the insurer, provided the USU policy number, and classified the "description of occurrence" as "fire loss". It further listed the names of both of the neighboring property owners under the heading "injured/property damaged". (Verv. Decl. Ex. 28.)

Within one week of receipt, USU assigned claims examiner Dolores Foreman to the Landau file. On October 19, the first day of her assignment, Foreman wrote in her case file: "NY late notice, subro correspondence from tenants' carrier. No add'l info provided." (Bernstein Aff. Ex. O.) Foreman's October 29 file notes reveal the fruits of an outside investigator's interview of Mordechi Landau, including information regarding the date of

---

**3.** The record does not include any documentation or testimony from Superior Adjusting. It is also devoid of any evidence of the substance of alleged conversations between Superior and Silver Associates. Notwithstanding this omission, it is clear that Silver Associates was aware of the existence and magnitude of

the damage to the building as early as the morning of the fire, when it forwarded an email to Weinstock that included the message: "Building is deemed a total and the city wants to tear it down". (Bernstein Aff. Ex. N.)

the fire, the renovation work undertaken by Vintaje, and Drecketts's injuries. Landau indicated that he had provided notice to SIB, but Foreman wrote that notice was an open issue because "the insured was aware of the fact that a tenant was injured as a result of the fire/explosion" and "notice to the retailer is not notice to the carrier." (*Id.*) Foreman also noted that the policy's independent contractor exclusion may be applicable if the fire was deemed to be the result of the renovations, but she sought more definitive information. By December 14, Foreman had discussed the file with other examiners, describing an "[o]verall opinion that disclaiming on late notice as relates to the Allstate subro claims ... may be inappropriate as the [insured] may not have been aware of the damage to those properties until receiving the subro corr." and indicating that disclaimer on the other endorsements may be "questionable." (Verv. Decl. Ex. 34.)

Foreman sent the Landaus an official disclaimer of coverage on December 28, 2004, copying Allstate and the deceased Drecketts on the letter, as well as purporting "to inform Allstate and Mr. Dreckett [sic] of the disclaimer of coverage and grounds for the disclaimer." The letter specifically disclaims coverage for two— and only two—reasons: (1) "you failed to provide timely notice of this *occurrence*" (emphasis added) despite knowledge as of the date of the explosion; and (2) "the incident arose out of the act of an independent contractor". (Verv. Decl. Ex. 34.)

### 4. *More Lawsuits and Subsequent Disclaimers*

In March 2005, Allstate filed a negligence action in state court against the Landaus and Vintaje, asserting in its verified complaint that "Vintaje ... negligently performed construction and/or renovation work, thereby causing an explosion

and fire to occur." (Verv. Decl. Ex. 18, *Allstate Ins. Co. v. Landau,* No. 5504/2005 (Kings County Ct.2005)). In a March 29, 2005 letter, USU reiterated its disclaimer and emphasized that the obviousness of the substantial damage to the premises would preclude the Landaus from justifying a failure to timely notify USU of the occurrence. Landau and Vintaje were also sued on March 16, 2005 by another neighbor, Deveaux, who alleged in her complaint that "as a result of the carelessness and negligence of the defendants ... an explosion resulted which caused damage" to her property. (Verv. Decl. Ex. 19, *Deveaux v. Landau,* No. 7840/2005 (Kings County Ct.2005)). Although the exact timing is not clear, USU learned of Deveaux's claims prior to the filing of the lawsuit, because USU disclaimed coverage for them on February 22, 2005. (Verv. Decl. Ex. 42).

On March 18, 2005, the Public Administrator of Kings County asserted a personal injury and wrongful death claim arising out of the injuries to Drecketts, alleging that "the defendants ... failed to prevent gas leaks, fires and/or explosive hazards upon said premises during and/or resulting from the work, labor and services performed upon said premises." (Verv. Decl. Ex. 20, *Public Admin. v. Landau,* No. 8255/2005 (Kings County Ct.2005)). On April 11, 2005, USU issued yet another disclaimer to the Landaus citing the same reasons as before. Finally, in 2006, Greenwich, as subrogee of Rachel Landau, filed a complaint against Mordechi Landau, seeking to recover monies paid to Rachel Landau to compensate for the damage to her property. (Verv. Decl. Ex. 45, *Greenwich Ins. Co. v. Landau,* No. 13460/2006 (Kings County Ct.2006)). On June 8, 2006, USU issued a disclaimer of coverage regarding the Greenwich lawsuit, but its only ground was the independent contractor exclusion. (*Id.* Ex. 46.)

In light of the pending state actions, USU commenced this action for declaratory judgment. The Landaus counterclaimed seeking a declaration that USU is obligated to defend and indemnify them in all of the actions. The Landaus also filed negligence suits against SIB and Silver Associates for damages arising from USU's assertion that it was not timely notified of the claimed loss. SIB answered the third party complaint and counterclaimed against the Landaus for indemnification on a theory of apportionment. Silver Associates and SIB also filed cross-claims against each other for contribution and indemnification.

### Discussion

#### 1. Standard for Summary Judgment

■ A motion for summary judgment is granted only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court's responsibility in assessing the merits of a summary judgment motion is thus not to try issues of fact, but rather to "determine whether there are issues of fact to be tried." Sutera v. Schering Corp., 73 F.3d 13, 16 (2d Cir.1995) (quoting Katz v. Goodyear Tire & Rubber Co., 737 F.2d 238, 244 (2d Cir.1984)). Accordingly, the moving party bears the burden of demonstrating that there is no genuine issue as to any material fact, see, e.g., Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir.2005), and the Court must resolve all ambiguities in the evidence and draw all permissible factual inferences in favor of the party opposing the motion. See, e.g.,

Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir.2004); Hetchkop v. Woodlawn at Grassmere, Inc., 116 F.3d 28, 33 (2d Cir. 1997) ("If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper").

■ If the moving party meets its initial burden of demonstrating the absence of a disputed issue of material fact, the burden shifts to the nonmoving party to present "specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e). The nonmoving party may not then rely solely on "conclusory allegations or unsubstantiated speculation" in order to defeat a motion for summary judgment. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir.1998). Rather, the nonmoving party must "make a showing sufficient to establish the existence of [each] element to that party's case ... since a complete failure of proof concerning an essential element of ... the non-moving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322–23, 106 S.Ct. 2548. If the evidence favoring the nonmoving party is "merely colorable ... or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (internal citations omitted).

#### 2. Availability of Declaratory Judgment

■ As an initial matter, defendants argue[4] that a declaratory judgment of non-coverage binding on all parties—both the Landaus and the injured tort claimants—

---

**4.** Defendants Landaus, Deveaux, Public Administrator/Drecketts, and SIB each filed separate opposition briefs to USU's motion, and often replicated each other's arguments. The Court refers to the defendants' briefs and arguments collectively.

would be premature because judgments against the Landaus on the underlying state actions are necessary "conditions precedent". Defendants theorize that parties who have not been deposed may eventually testify at the state court trials, "bringing new evidence to light" which "may well be relevant to the determination of coverage." (Opposition of Edna Deveaux ("Deveaux Opp.") at 5.) However, defendants merely speculate that the parties will learn of new material facts, and they certainly cannot make a prediction as to their substance. Further, "it is well settled that the declaratory judgment mechanism may be used to address coverage issues even though the underlying tort claimant has not yet reduced his claim against the insured to judgment." *Bluestein & Sander v. Chicago Ins. Co.*, No. 99–CV–11519, 2001 WL 167707, at *2, 2001 U.S. Dist. LEXIS 1587, at *7 (S.D.N.Y. Feb. 20, 2001), *aff'd*, 276 F.3d 119 (2d Cir.2002).

Contrary to defendants' assertions, it is irrelevant that under New York law an injured party may only assert a cause of action directly against a tortfeasor's liability insurer after the injured party has obtained a judgment against the tortfeasor-insured itself. N.Y. Ins. Law § 3420(a)(2) (McKinney 2009); *see Lang v. Hanover Ins. Co.*, 3 N.Y.3d 350, 354–55, 787 N.Y.S.2d 211, 214, 820 N.E.2d 855, 858 (2004). Section 3420 of the Insurance Law manifests the common sense proposition that injured parties are not usually signatories to the contract between the insurer and the insured, and thus cannot assert rights under that policy until a judgment puts the injured party into the insured's shoes, creating a statutory entitlement. *See id.* (*citing Coleman v. New Amsterdam Cas. Co.*, 247 N.Y. 271, 160 N.E. 367, 369 (1928)). But, § 3420 does not bear on the situation where, as here, the *insurer* pursues a declaration of noncoverage

against its insured *and* the injured tort claimants. Defendants simply cannot support their contention that insurers may not pursue such declarations simply because injured parties are also named defendants.

In any event, whether USU purports to "bind" prematurely the injured parties to its desired remedy is of no consequence. Even if USU only named the Landaus as defendants, and thus the action was purely between the two parties to the insurance contract, the result of any declaratory judgment denying coverage would practically affect the injured parties in exactly the same way as if they had been named defendants. The Court would determine the meaning of the policy and, if it found no coverage for the circumstances set forth in the injured parties' allegations, those parties would have no rights to indemnification from the insurer anyway. The tort claimants are thus "bound" to the Court's coverage determination irrespective of their presence in the case caption.

### 3. The Independent Contractors Exclusion

Defendants next argue that, to the extent USU rests on the independent contractor exclusion, summary judgment should be denied because the exclusion is invalid as ambiguous and unconscionable, and because its application here is itself a disputed issue of material fact.

#### a) Ambiguity

Defendants assert vagueness in the term "independent contractor" and the phrase "performed for any insured", arguing that although Vintaje Construction may be properly understood as an "independent contractor" of the Landaus, the same cannot be said for Barham or for the day laborer, neither of whom was hired by, had contact with, or directly "performed for"

the Landaus. Defendants also argue that the "arising out of" language is ambiguous because it would encompass any complex chain of events even if an independent contractor is only tangentially or minimally involved in the event causing liability. Defendants suggest that the phrase should not be broadened by implication to mean "arising *in whole or in part* out of" an independent contractor's operations. (Deveaux Opp. at 14.)

 "The law governing the interpretation of exclusionary clauses in insurance policies is highly favorable to insureds." *Pioneer Tower Owners Ass'n v. Farm Fire & Cas. Co.*, 12 N.Y.3d 302, 306, 880 N.Y.S.2d 885, 885, 908 N.E.2d 875, 876 (2009). "[W]henever an insurer wishes to exclude certain coverage from its policy obligations, it must do so in clear and unmistakable language ... [and] such exclusions or exceptions from policy coverage must be specific and clear in order to be enforced." *Id.* at 307, 880 N.Y.S.2d 885, 908 N.E.2d 875 (*quoting Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 311, 486 N.Y.S.2d 873, 876, 476 N.E.2d 272, 275 (1984)). Thus, it is the insurer's burden to prove that an otherwise covered loss falls within a stated policy exclusion. *Morgan Stanley Group, Inc. v. New Eng. Ins. Co.*, 225 F.3d 270, 276 n. 1 (2d Cir.2000). Nevertheless, whether an ambiguity exists in an insurance policy is a question of law for the Court. *See U.S. Underwriters Ins. Co. v. Tauber*, 604 F.Supp.2d 521, 527 (E.D.N.Y.2009).

 Contrary to defendants' contention, and as several courts have found, the independent contractor exclusion in the USU policy is unambiguous. *See U.S. Underwriters Ins. Co. v. Zeugma Corp.*, No. 97–CV–8031, 1998 WL 633679, at *3, 1998 U.S. Dist. LEXIS 14448, at *7–*8 (S.D.N.Y. Sept. 15, 1998) ("[T]he language of the exclusion at issue here—excluding

coverage for property damage 'arising out of operations performed for any insured by independent contractors'—has consistently been found by courts to be 'clear and unambiguous.' ") (*citing U.S. Underwriters Ins. Co. v. Congregation B'Nai Israel,* 900 F.Supp. 641, 645 (E.D.N.Y.1995) and *Mount Vernon Fire Ins. Co. v. Future Tech Constr. Corp.,* 1997 U.S. Dist. LEXIS 10799, 1997 WL 419997, at *2 (S.D.N.Y. July 28, 1997)). In fact, this exclusion has been held valid in the face of attacks identical to the defendants'. In *U.S. Underwriters Ins. Co. v. Congregation Kollel Tisereth,* No. 99–CV–7398, 2004 WL 2191051, at *7, 2004 U.S. Dist. LEXIS 19608, at *22–*23 (E.D.N.Y. Sept. 30, 2004), a judge of this Court rejected the argument that the exclusion did not encompass subcontractors or their employees, noting that "courts relying on the ordinary meaning of the term ['independent contractor'] have defined it as: 'one who contracts to do certain work according to his own methods, and without being subject to the control of his employer except as the product or result of his work.' " Similarly, in *U.S. Underwriters Ins. Co. v. Held Bros., Inc.,* No. 97–CV–5407, 1998 WL 355425, at *2 n. 2, 1998 U.S. Dist. LEXIS 9694, at *6 n. 2 (S.D.N.Y. June 30, 1998), the court found that the exclusionary clause applied to claims against an independent contractor and that it was "irrelevant" to coverage whether that contractor subcontracted the performance of its duties.

Courts have also explicitly rejected arguments that the exclusion is ambiguous due to the use of the "arising out of" language, because such words are "broad, general, comprehensive terms ordinarily understood to mean originating from, incident to, or having connection with the operations performed by an independent contractor for the insured." *Zeugma*

*Corp.*, 1998 WL 633679, at *3, 1998 U.S. Dist. LEXIS 14448, at *8 (internal quotation marks omitted). The New York Court of Appeals held that this language is unambiguous used in an exclusion clause and should be applied in the form of a "but for" test in determining coverage. *Mount Vernon Fire Ins. Co. v. Creative Hous. Ltd.*, 88 N.Y.2d 347, 352, 645 N.Y.S.2d 433, 434, 668 N.E.2d 404, 405 (1996); *see Congregation Kollel*, 2004 WL 2191051, at *6–7, 2004 U.S. Dist. LEXIS 19608, at *19–*20 (applying "but for" test to USU independent contractor exclusion). Here, it is clear that within the context of the injured parties' allegations, *but for* the alleged negligence in failing to fix a gas leak, the explosion would not have occurred. The exclusion is, accordingly, valid and applicable.

Lastly, though citing to no precedent, defendants express concern as a matter of public policy over the possibility that such an ill-defined exclusion would apply even where "an independent contractor of an independent contractor of the insured's independent contractor is 1% negligent and the insureds (or other parties) are 99% negligent." (Deveaux Opp. at 14). Factually, given the contractor's plea of guilty to criminally negligent homicide, this concern is of no moment. More importantly, even if rooted in reality, this concern would still be legally insignificant, because it is premised on the assumption that such an implementation of the exclusion is proof of ambiguity, which is a conclusion that this Court rejects.[5]

### b) Unconscionability

A contract may be void for unconscionability in New York when it "is so grossly unreasonable or unconscionable in light of the mores and business practices of the time and place as to be unenforcible [sic] according to its literal terms." *Rosenfeld & Quality Frozen Foods, Inc. v. Port Auth. of N.Y. & N.J.*, 108 F.Supp.2d 156, 164 (E.D.N.Y.2000) (*quoting Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10, 537 N.Y.S.2d 787, 791, 534 N.E.2d 824, 828 (1988)). In determining whether a contract is procedurally unconscionable, courts examine whether there is a "lack of meaningful choice" for a party, looking at factors such as "size and commercial setting of the transaction, whether deceptive or high-pressured tactics were employed, the use of fine print in the contract, the experience and education of the party claiming unconscionability, and whether there was disparity in bargaining power." *Id.* Substantive unconscionability requires a determination whether "the terms were unreasonably favorable to the party against whom unconscionability is urged." *Id.*

Defendants fall well short of demonstrating that the USU independent contractor exclusion is unconscionable. That many courts have already considered, upheld, and applied the exclusion certainly mitigates against a finding that it is patently unreasonable. Yet even if the Court disregards such precedent, defendants' allegations prove nothing more than

---

5. Defendants also attempt to establish ambiguity by citing to the deposition testimony of Foreman, contending that, since USU's own claim examiner seemed confused as to the exact meaning of the exclusion, it must therefore be ambiguous and invalid. The Court, however, looks no further than the four corners of the policy to determine that the language is unambiguous, and need not delve into the reasonableness of Foreman's interpretations. *See State v. Home Indem. Co.*, 66 N.Y.2d 669, 671, 495 N.Y.S.2d 969, 970, 486 N.E.2d 827, 829 (1985) ("Generally, the courts bear the responsibilities of determining the rights or obligations of parties under insurance contracts based on the specific language of the policies.").

the fact that the policy is a pre-printed form contract, which alone is insufficient to invalidate the clause. *See Rosenfeld,* 108 F.Supp.2d at 165 ("[A]lthough it is true that there is a 'disparity in bargaining power' here, such is the case with the vast majority of form contracts, including those that are enforceable."); *Brower v. Gateway 2000,* 246 A.D.2d 246, 253 676 N.Y.S.2d 569, 573 (1st Dep't 1998) (noting that unequal bargaining power "alone does not invalidate the contract as one of adhesion", and explaining that the unconscionability doctrine's purpose "is simply to ensure that the more powerful party cannot 'surprise' the other party with some overly oppressive term"). Conclusory assertions that the Landaus were vulnerable and that USU was obligated to affirmatively determine their ability to understand the policies do not establish such unequal bargaining power as to void the agreement. Similarly, the fact that Mordechi Landau did not read the policy does not demonstrate unconscionability, because New York law is abundantly clear that "when a party to a written contract accepts it as a contract he is bound by the stipulations and conditions expressed in it whether he reads them or not." *Metzger v. Aetna Ins. Co.,* 227 N.Y. 411, 416, 125 N.E. 814, 816 (1920).

### c) "Proof" of Independent Contractor Involvement

Lastly on this score, defendants argue that USU has not yet adequately proven the causes of the fire, and thus it would be premature to deny coverage based on the independent contractor exclusion. However, as discussed above, *see supra* Part 2, that issues of fact may remain to be litigated in the underlying action is not a bar to declaratory judgment. The complaints by the injured parties against the Landaus all clearly allege that the damage and injuries sustained were a direct result of the negligence of the independent contractors hired by the Landaus. To the extent that the Landaus are held liable in these lawsuits, it will be because the state court, after engaging in the necessary factfinding, has determined, as alleged in the respective state court tort complaints, that the negligence of the independent contractors was a proximate cause of the injuries resulting from the explosion and fire at the Landau premises. Such liability would fall under the independent contractors exclusion, and USU's disclaimer on such grounds would, indeed, be valid.

### 4. Timeliness of Disclaimer

Even if the independent contractor exclusion constituted a proper ground for disclaimer of coverage by USU, defendants argue that any such written disclaimer on this ground or the other ground stated by USU, late notice of the occurrence, *see Argo Corp. v. Greater N.Y. Mut. Ins. Co.,* 4 N.Y.3d 332, 339, 794 N.Y.S.2d 704, 706, 827 N.E.2d 762, 764 (2005), would be ineffective as untimely.

### a) Legal Standards

██ Failure to disclaim insurance coverage in a manner that is reasonably timely under the circumstances may result in waiver of the right to disclaim. *See Columbia Cas. Co. v. Nat'l Emergency Servs., Inc.,* 282 A.D.2d 346, 347, 723 N.Y.S.2d 473, 474 (1st Dep't 2001) ("It is settled that failure by the insurer to give written notice of disclaimer based on an exclusion or failure to comply with a policy condition as soon as is reasonably possible renders the disclaimer ineffective."). This is true whether the disclaimer pertains to coverage for claims based on personal injury (*i.e.,* Drecketts) or damage to property (*i.e.,* Allstate, Deveaux, and Greenwich).

██ Section 3420(d) of the Insurance Law requires that an insurer seeking to "disclaim liability or deny coverage for death or bodily injury arising out of an . . . accident . . . give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant." N.Y. Ins. Law § 3420(d)(2) (McKinney 2009). Under this statutory framework, an insurer's failure to provide notice "as soon as is reasonably possible after it first learns of the accident or of grounds for disclaimer of liability or denial of coverage, precludes effective disclaimer or denial." *Hartford Ins. Co. v. County of Nassau*, 46 N.Y.2d 1028, 1029, 416 N.Y.S.2d 539, 540, 389 N.E.2d 1061, 1062 (1979); *see N.Y. Univ. v. First Fin. Ins. Co.*, 322 F.3d 750, 753 n. 3 (2d Cir.2003) (noting that under § 3420(d) "an insurer cannot deny coverage if it delays unreasonably in issuing its denial, even if the insured has itself delayed unreasonably in notifying the insurer of the occurrence") (*citing Allcity Ins. Co. v. Jimenez*, 78 N.Y.2d 1054, 1056, 576 N.Y.S.2d 87, 88, 581 N.E.2d 1342, 1343 (1991)). Although § 3420(d)(2) does not apply to claims for property damage, disclaimers under those circumstances may nonetheless be waived pursuant to common law equitable estoppel, which applies when an insurer "unreasonably delays in disclaiming coverage", as "judged from the time that the insurer is aware of sufficient facts to issue a disclaimer." *Bluestein v. Chicago Ins. Co.*, 276 F.3d 119, 122 (2d Cir.2002); *see Frazier v. Royal Ins. Co. of Am.*, 110 F.Supp.2d 110, 115 (N.D.N.Y.2000).

██ Consequently, the burden is on USU to justify any delays in disclaiming coverage. *See Hartford Ins.*, 46 N.Y.2d at 1029, 416 N.Y.S.2d at 541, 389 N.E.2d at 1063. Yet, neither statute nor precedent provides a "fixed yardstick against which to measure the reasonableness, or unreasonableness, of an insurer's delay," and what constitutes "reasonable delay" is most often a question of fact, "dependent on all of the circumstances of a case." *First Fin. Ins. Co. v. Jetco Contracting Corp.*, 1 N.Y.3d 64, 70, 769 N.Y.S.2d 459, 463–64, 801 N.E.2d 835, 839–40 (2003); *see Osterreicher v. Home Mut. Ins. Co. of Binghamton, N.Y.*, 272 A.D.2d 926, 927, 707 N.Y.S.2d 742, 743 (4th Dep't 2000). That said, where delays are *unexplained* by the insurer, New York courts have held waiting periods of approximately two months or longer unreasonable as a matter of law. *See, e.g., Jetco*, 1 N.Y.3d at 70, 769 N.Y.S.2d at 463–64, 801 N.E.2d at 839–40 (48 days); *Hartford Ins. Co.*, 46 N.Y.2d at 1029, 416 N.Y.S.2d at 541, 389 N.E.2d at 1063 (two months). *But Cf. Utica Fire Ins. Co. v. Spagnolo*, 221 A.D.2d 921, 922, 634 N.Y.S.2d 296, 297 (4th Dep't 1995) ("The reasonableness of an insurer's delay of less than two months is generally viewed as a factual issue that should not be resolved on a motion for summary judgment."). On the other hand, a "delay occasioned by a 'reasonably prompt, thorough, and diligent investigation of the claim' does not render the insurer's disclaimer untimely, because an investigation is often necessary to determine whether there is any basis for disclaiming coverage." *Webster v. Mount Vernon Fire Ins. Co.*, 368 F.3d 209, 216–17 (2d Cir.2004) (*quoting In re Prudential Prop. & Cas. Co.*, 213 A.D.2d 408, 408, 623 N.Y.S.2d 336, 336 (2d Dep't 1995)); *see Jetco*, 1 N.Y.3d at 69, 769 N.Y.S.2d at 463, 801 N.E.2d at 839.

#### b) Disclaimer of Coverage for Personal Injury Claims

The personal injury and wrongful death claim brought against the Landaus by the Public Administrator on behalf of Drecketts clearly falls under § 3420(d). Whether USU should be estopped from disclaim-

ing coverage, then, depends in the first instance on how long USU had known of the accident and at what point it should have been aware of the information it asserted in support of the December 24, 2008 disclaimer, which purported to inform Drecketts and the Landaus of the grounds for disclaimer. *See Mount Vernon Fire Ins. Co. v. Unjar,* 177 A.D.2d 480, 481, 575 N.Y.S.2d 694, 696 (2nd Dep't 1991) ("The reasonableness of any delay in disclaiming must be judged from the time that the insurer is aware of sufficient facts to issue a disclaimer.") Defendants argue that the clock for USU's disclaimer began to tick on June 16, 2004, when its agent Silver Associates received the Acord from SIB. Plaintiff replies that Silver Associates only accepted notice in its capacity as an agent for Greenwich, not as an agent to USU, because the Acord did not inform Silver Associates of any potential third party liability. Thus, plaintiff argues, it did not receive notice until October 14, and the approximately two and a half month delay was reasonable in light of USU's investigation into the claims.

██ As an initial matter, the Court finds that notice of the occurrence was provided to USU when Silver Associates received the Acord form in June. Although insurance brokers are generally considered agents of the insured, and notice to an ordinary broker does not usually constitute notice to the liability carrier, *see Gershow Recycling Corp. v. Transcont'l Ins. Co.,* 22 A.D.3d 460, 462, 801 N.Y.S.2d 832, 833 (2nd Dep't 2005), "a broker will be held to have acted as the insurer's agent where '[t]here [is some] evidence of . . . action on the insurer's part, or facts from which a general authority to represent the insurer may be inferred.'" *U.S. Underwriters Ins. Co. v. Manhattan Demolition Co.,* 250 A.D.2d 600, 600, 672 N.Y.S.2d 384, 385 (2nd Dep't 1998) (*quoting Matco*

*Prods. v. Boston Old Colony Ins. Co.,* 104 A.D.2d 793, 796, 480 N.Y.S.2d 134, 137 (2nd Dep't 1984)); *see Cohen v. Utica First Ins. Co.,* 436 F.Supp.2d 517, 527 (E.D.N.Y.2006). Authority has been found where the agent's role "went far beyond that of solicitor of the liability policy," including responsibilities such as "collecting premiums, issuing the policy, and being designated as an 'agent or broker' for the insurer." *Phila. Indem. Ins. Co. v. Horowitz, Greener & Stengel, LLP,* 379 F.Supp.2d 442, 457 (S.D.N.Y.2005) (*citing Mighty Midgets, Inc. v. Centennial Ins. Co.,* 47 N.Y.2d 12, 17, 416 N.Y.S.2d 559, 561, 389 N.E.2d 1080, 1082 (1979)).

██ Here, Silver Associates was an agent vested with authority to receive notice of an occurrence on behalf of USU. Under the Agency and Brokerage Agreement, Silver Associates was contractually permitted and, for some purposes, obligated to collect premiums, create daily underwriting reports, and, most importantly, report accidents. Although USU tries to pass the buck to the Landaus and their agents for only listing the Greenwich policy on the Acord, whether the insured "wished to make a claim" on the liability policy (USU Br. at 10) is irrelevant. Pursuant to its agreement, Silver Associates was obligated to report not only *claims,* but also "losses", *i.e.* occurrences, suffered by USU's clients. Silver Associates therefore did not need to be explicitly instructed by the insured to transmit notice to USU, because Silver Associates's obligation to report to USU was triggered immediately upon its receipt of the Acord describing a "loss" by an "explosion". Notwithstanding the nebulous involvement of SIB and/or Superior Adjusters, the Landaus were able to satisfy their obligation to provide notice of the occurrence to USU's agent. USU's subsequent disclaimers are without merit

to the extent that they were based on untimely notice of the "occurrence".[6]

USU, as a result, had imputed knowledge of the explosion for more than six months prior to the issuance of its initial disclaimer. While, on its face, this half year delay vitiates the disclaimer based on untimely notice, other material fact issues remain. Although hindsight is 20/20, the Court cannot discern the earliest point at which USU reasonably should have learned of the integral role played by the independent contractor in the accident. Even if USU had sufficient awareness of the seriousness of the occurrence such that it was obligated to commence some sort of investigation in June, see Mayer's Cider Mill, Inc. v. Preferred Mut. Ins. Co., 63 A.D.3d 1522, 1523, 879 N.Y.S.2d 858 (4th Dep't 2009) ("It is incumbent upon the insurance company to conduct its own prompt investigation"), thereby undermining USU's contention that its investigation four months later was "reasonably prompt and diligent", the Court cannot determine as a matter of law whether that investigation did or should have put USU on notice that the explosion stemmed from the actions or omissions of the "independent contractor", Barham, who had not yet pled guilty to criminally negligent homicide. In short, the disclaimer on notice grounds fails, but timeliness of the "independent contractor" disclaimer is an open question. Accordingly, summary judgment regarding coverage for USU on the Drecketts claim is inappropriate.

### c) Disclaimer of Coverage for Property Damage Claims

 Summary judgment for USU is appropriate, however, with respect to coverage for the property damage claims by Allstate, Deveaux, and Greenwich, because defendants have failed to establish an essential component of equitable estoppel. Even assuming arguendo that the disclaimers for the property damage claims were unreasonably delayed as a matter of law, to prove equitable estoppel, unlike waiver under § 3420(d), see Adams v. Chi. Ins. Co., 49 Fed.Appx. 346, 349 n. 1 (2d Cir.2002), defendants still would have to show that they relied on USU's coverage to their detriment and were prejudiced by its delay in disclaiming. See Bluestein, 276 F.3d at 122; Amer. Home Assurance Co. v. Republic Ins. Co., 984 F.2d 76, 79 (2d Cir.1993); Mount Vernon Fire Ins. Co. v. J.J.C. Stucco & Carpentry Corp., No. 95–CV–5202, 1997 WL 177864, at *2, 1997 U.S. Dist. LEXIS 21690, at *4 (E.D.N.Y. Apr. 8, 1997). No facts or allegations on the record demonstrate any such prejudice to the Landaus for USU's alleged late disclaimers. Nor can prejudice be presumed under the facts of this case, because the presumption only applies where "an insurer, though in fact not obligated to provide coverage, without asserting policy defenses or reserving the privilege to do so, undertakes the defense of the case, in reliance on which the insured suffers the detriment of losing the right to control its own defense." Bluestein, 276 F.3d at 122.

As the Court has already determined that the independent contractors exclusion in the USU policy is valid and, if not waived by delay, applies to the claims made against the Landaus, USU is entitled to judgment as a matter of law and a declaration of noncoverage with respect to the property damage claims against the

6. USU's argument that "notice to one insurer does not constitute notice to all insurers" (USU Br. at 9–10) is similarly irrelevant because it is based on its erroneous assumption that notice to Silver Associates only constitut-ed notice to Greenwich. USU's argument, and the cases upon which USU relies, would only be relevant if the Landaus bypassed USU's agent (Silver Associates) altogether and directly contacted Greenwich.

Landaus by Allstate, Deveaux, and Greenwich.

### 5. *Silver Associates' and SIB's Motions for Summary Judgment*

In their negligence complaints against third parties Silver Associates and SIB, the Landaus seek only one remedy: a declaration that both brokers are jointly and severally liable for "damages, costs and expenses arising out of [USU]'s assertion that it was not properly or timely advised of the fire". (Verv. Decl. Exs 8, 10.) The brokers' crossclaims against each other are based entirely on potential damages arising out of the Landaus' third-party complaint. Although the parties devote significant effort to proving that other parties were at fault for the breakdowns in communication between the insured and insurer, the Court has found that notice of the fire was provided in a timely manner to USU. As a result, the Landaus' third party claims are no longer sustainable; there was no injury or damage to the Landaus vis-á-vis the actions or omissions of SIB or Silver Associates, much less any damages proximately caused by either broker's breach of any alleged duties owed to the Landaus. *J.G. v. Card,* No. 08–CV–5668, 2009 WL 2986640, at *10, 2009 U.S. Dist. LEXIS 85372, at *25 (S.D.N.Y. Sept. 17, 2009) (*citing King v. Crossland Sav. Bank,* 111 F.3d 251, 259 (2d Cir.1997) (listing the *prima facie* elements of a negligence cause of action). Summary judgment is thus appropriate on both the SIB and Silver Associates motions, and the brokers' crossclaims against one another are also dismissed.

### Conclusion

For the reasons discussed above, U.S. Underwriters Insurance Company's motion for summary judgment is granted in part and denied in part. The Court directs the entry of a declaratory judgment that U.S. Underwriters Insurance Company has no obligation to defend and indemnify (or make payments on any judgment obtained against) the Landaus in the following actions brought in Supreme Court of the State of New York, Kings County: (1) *Allstate Insurance Company a/s/o Miguel Medrano and Vincent Alexis v. Landau,* Index No. 5504/05; (2) *Deveaux v. Landau,* Index No. 7840/05; and (3) *Greenwich Insurance Company a/s/o Rachel Landau v. Landau,* Index No. 13460/06. The Court denies summary judgment with regard to whether plaintiff is obligated to provide insurance coverage for any damages arising out of claims against the Landaus in *Public Admin. v. Landau,* No. 8255/2005. The motions for summary judgment by Secure Insure Brokerage, Inc. and Leon G. Silver & Associates, Ltd. are granted, and the Landaus' actions against them are dismissed. The cross-claims between Secure Insure Brokerage, Inc. and Leon G. Silver & Associates are also dismissed.

SO ORDERED.