82 Mass. App. Ct. 415 (2012)                                        415

Cable Mills, LLC *v.* Coakley Pierpan Dolan & Collins Insurance Agency, Inc.; Lloyd's, London.

CABLE MILLS, LLC *vs.* COAKLEY PIERPAN DOLAN AND
COLLINS INSURANCE AGENCY, INC.; CERTAIN UNDERWRITERS
AT LLOYD'S, LONDON, third-party defendants.

No. 11-P-1852.

Middlesex. June 4, 2012. - September 11, 2012.

Present: VUONO, SIKORA, & FECTEAU, JJ.

*Practice, Civil,* Summary judgment. *Contract,* Insurance. *Insurance,* Construction of policy. *Words,* "Independent contractor," "Subcontractor."

In the circumstances of a claim brought in Superior Court against an insurer by an insurance broker (broker) seeking a judgment declaring that a commercial property and general liability policy (policy) issued by the insurer to a property owner (owner) afforded coverage to the owner for claims brought by an engineer injured at a construction project on the owner's property, the judge properly granted summary judgment in favor of the insurer based on a policy exclusion for independent contractors, where the engineer's performance of professional engineering services essential to the project, pursuant to a contract between the owner and its architect, sufficiently fell within the common meaning of the language of the exclusion [417-421]; further, where the plain language of the business agreements concerning the project described services delegated to the architect and engineer as those to be performed by independent contractors, those not in direct privity to the owner (such as the engineer) as well as general contractors who were party to a direct contract (such as the architect) qualified as independent contractors under the plain meaning of the exclusion [421-423]; finally, there was no merit to the contention of the broker and the owner that the insurer's failure to use broader language limited the scope of the exclusion [423-425].

CIVIL ACTION commenced in the Superior Court Department on January 15, 2010.

A third-party complaint for declaratory relief was heard by *Mitchell H. Kaplan,* J., on motions for summary judgment, and entry of separate and final judgment was ordered by *Dennis J. Curran,* J.

*Anthony J. Cichello* for the plaintiff.

*William P. Rose* for the defendant.

*John Egan* for the third-party defendants.

FECTEAU, J. Cable Mills, LLC (Cable Mills), and Coakley Pierpan Dolan and Collins Insurance Agency, Inc. (Coakley), appeal from the allowance, by a judge of the Superior Court, of the motion for summary judgment in favor of the third-party defendants, certain underwriters at Lloyd's, London (Lloyd's).[1] At issue is whether a provision in a commercial property and general liability policy excluding coverage for independent contractors applies in the instant case, which would have the effect of barring indemnity and defense of the insured party, Cable Mills, in connection with a personal injury lawsuit brought against it. The lawsuit, brought by William Barry, a structural engineer hired to assist in the renovation of an old mill (project), originates from a March 13, 2006, accident in which Barry is alleged to have sustained serious injuries as a result of falling through the floor at the site of the project (underlying litigation).[2] As we agree that the exclusion applies to Barry in these circumstances, we affirm the allowance of summary judgment.

*Background.* Cable Mills owned an old mill located at 160 Water Street in Williamstown, which it intended to renovate into a complex of mixed-use (i.e., commercial and residential) condominium units. Toward that end, in December, 2005, Cable Mills entered into a contract with Feingold Alexander & Associates, Inc. (Feingold), for architectural services for the project; in turn, Feingold retained Barry to provide structural engineering consultation on the project.

At the time of Barry's accident, Cable Mills was insured under a commercial property and general liability policy (policy) issued by Lloyd's, which was limited, by endorsement, to "one building only,"[3] described by the declarations page as a "vacant building." Cable Mills was a customer of Coakley with regard to the insurance for the project, and Coakley provided the policy,

---

[1]Cable Mills filed an assertion of direct claim against Lloyd's; cross motions for summary judgment filed by both Cable Mills and Coakley were denied.

[2]Barry's wife is also a plaintiff in that suit, alleging loss of consortium. We refer to them in the singular.

[3]There is no issue whether the accident occurred at the insured premises.

82 Mass. App. Ct. 415 (2012)                    417

Cable Mills, LLC *v.* Coakley Pierpan Dolan & Collins Insurance Agency, Inc.; Lloyd's, London.

running from October 21, 2005, to April 21, 2006, through a surplus lines broker. The policy included the following standard provision: "This insurance does not apply to 'bodily injury,' 'property damage,' 'personal injury,' 'advertising injury,' or medical payments for operations performed for you[4] by independent contractors or your acts or omissions in connection with your general supervision of such operations" (exclusion). Relying on this exclusion, Lloyd's denied coverage for injuries sustained by Barry and declined to defend Cable Mills in the underlying litigation.

Cable Mills brought an action against its agent, Coakley, for negligence and violation of G. L. c. 93A and c. 176D, alleging Coakley failed to obtain the proper insurance coverage. In addition to denying liability, Coakley brought a third-party complaint against Lloyd's seeking a declaration that the policy issued by Lloyd's does in fact afford coverage to Cable Mills for the claims brought by Barry. On cross motions for summary judgment, a Superior Court judge denied the motions brought by Cable Mills and Coakley and allowed the motion brought by Lloyd's.[5] In finding no genuine dispute of fact, the judge relied on the policy exclusion. Lloyd's filed a motion for final and separate judgment, Mass.R.Civ.P. 54(b), 365 Mass. 820 (1974), which was allowed.

*Discussion.* On appeal, Cable Mills and Coakley[6] argue that the plain language of the exclusion does not apply to Barry's alleged injuries because Feingold, rather than Cable Mills, retained Barry, and therefore, any services provided by Barry were necessarily "performed for" Feingold, not Cable Mills, an employment relationship that falls outside the scope of the contractual language. Lloyd's avers, to the contrary, that such a narrow construction of the working relationship referred to by the exclusionary language is improper and contrary to the plain meaning of the contract. We agree with the judge that performance of

---

[4]As defined under the policy, "you" refers to Cable Mills.

[5]In denying coverage, Lloyd's also relied on the exclusion from coverage for independent contractors' employees or leased workers, but the judge did not reach the issue. We also do not address this issue.

[6]While we acknowledge the distinct interests of Cable Mills and Coakley, in the interest of simplicity, where their arguments overlap, we will refer to them collectively as "Cable Mills."

professional engineering services essential to the project, pursuant to a contract between the property owner and its architect, sufficiently fulfills the common meaning of "operations performed for you."

The issue at bar is one well-suited for summary judgment, since the "interpretation of an insurance contract is a question of law for the court." *Kelleher* v. *American Mut. Ins. Co.*, 32 Mass. App. Ct. 501, 503 (1992). "Like all contracts, insurance contracts are to be construed according to the fair and reasonable meaning of the words in which the agreement of the parties is expressed. A policy of insurance whose provisions are plainly and definitely expressed in appropriate language must be enforced in accordance with its terms." *Cody* v. *Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982) (quotations and citations omitted). The insured generally bears the burden of proving that a particular claim falls within a policy's coverage, see *Markline Co.* v. *Travelers Ins. Co.*, 384 Mass. 139, 140 (1981), while the insurer has the burden of proving the applicability of a particular exclusion. See *Hanover Ins. Co.* v. *Talhouni*, 413 Mass. 781, 785 (1992); *Great Southwest Fire Ins. Co.* v. *Hercules Bldg. & Wrecking Co.*, 35 Mass. App. Ct. 298, 302 (1993).

1. *Scope of the exclusion.* a. *Beckford analysis.* Turning to the contested interpretation of the phrase "for you," as used in the exclusion, we find the plain meaning of the phrase to encompass all work done to further the project undertaken by Cable Mills, including those services provided by Barry. As the judge found in allowing summary judgment for Lloyd's, the analysis in U.S. Underwriters Ins. Co. *vs.* Beckford, U.S. Dist. Ct. No. 93-CV-4272 (E.D.N.Y. Jan. 20, 1998), is persuasive and applicable to the question whether privity is required by the exclusion. In the Beckford decision, the relevant policy excluded coverage for any "bodily injury to any employee of any insured, to any contractor *hired or retained by or for any insured* or to any employee of such contractor" (emphasis added). *Id.* The owner and general contractor of the project therein challenged the applicability of the exclusion, arguing (1) that the injured party was not hired by the owner directly, and (2) that the injured party was a subcontractor and thus outside the scope

of the exclusion. *Id.* The Beckford court rejected both claims, and its analysis is instructive to the issues here. *Id.*

In the Beckford decision, the court held that the plain and ordinary meaning of the exclusion clause applied to the factual circumstances presented, whereby a general contractor retained another contractor "to perform work on real property owned by [the owner that] necessarily was for the benefit of [the owner]." *Id.* Moreover, the court interpreted the exclusionary provision in the Beckford decision to "clearly contemplate[] that a contractor could be retained by a party other than the insured on the insured's behalf." *Id.* Cable Mills does not dispute the validity of the reasoning in the Beckford decision, but it nevertheless attempts to draw a material, factual distinction between the exclusion there and the exclusion in the instant case. We find no such distinction.[7]

The Beckford court focused its analysis on the interpretation of the terminology "for any insured," which is instructive as far as it understands the language, "retained by or for any insured," to signify that the exclusion applies even in circumstances where a party is hired on the insured's behalf, by someone other than the insured itself. See *id.* In so opining, the court implicitly rejected the view, identical to the view proffered by Cable Mills here, that where a policy includes such language, the parties intended to equate the hiring party with the party for which the services are ultimately being performed. Rather, the Beckford decision makes clear that the word "for" is to be broadly applied to include the ultimate beneficiary of the services as well

[7]With regard to the secondary argument asserted by Cable Mills, that the Beckford decision is distinguishable based on the court's finding that the owner of the project maintained "close ties" with the general contractor, we find such contentions to be without merit. However relevant the factual finding that the owner and the general contractor in the Beckford decision shared some responsibilities in overseeing the construction project, Cable Mills is mistaken in its application of this fact. Specifically, the Beckford court based its finding of close ties on the fact that the two entities were governed by the same president. The contract between the two parties anticipated that the general contractor would retain subcontractors, and the owner had a right to refuse the hiring of any subcontractor. Beckford, *supra.* While we acknowledge that Cable Mills and Feingold did not share such an intimate business relationship, the signed contract between them explicitly contemplated the retention of Barry for structural engineering services.

as the hiring party. We adopt the rationale of the Beckford court and therefore conclude that the exclusion applies to Barry, where the nature of the services he performed were expressly in furtherance of Cable Mills' project.

b. *Application of exclusion.* All material terms in the policy must be interpreted in a reasonable manner that is consistent with the background and purpose of the entire policy. *Sullivan* v. *Southland Life Ins. Co.*, 67 Mass. App. Ct. 439, 442 (2006). The word "for" in the term "for you" means "having as goal or object." Webster's Third New International Dictionary 886 (2002). The circumstances of Barry's hiring, well-documented in the record, demonstrate that the engineering services provided by Barry furthered the renovation project. Cable Mills originally retained Feingold for architectural services in connection with its renovation project; its contract with Feingold (Feingold contract) clearly anticipated that Feingold would, in aid of its performance for Cable Mills, retain consultants.[8] Indeed, Feingold identified Barry as such a consultant in its contract with Cable Mills. The record is thus clear that Barry was to perform his specific engineering services to assist in the project initiated by Cable Mills.

While Barry's actual consultations would likely be with Feingold, the overarching reality of that relationship was that Barry's services were performed for the Cable Mills project, without which Barry's services would have been unnecessary and unbidden. The record contains an unambiguous proposed agreement between Feingold and Barry, which states in its opening

---

[8]Section 1.2.3 of the Feingold contract states: "The services performed by the Architect, the Architect's employees and Architect's consultants shall be as enumerated in Article 1.4."

In § 1.2.3.4, the Feingold contract states, in part: "The Architect shall require of Architect's consultants similar agreements to maintain the confidentiality of information specifically designated as confidential by the Owner."

Section 2.1.9 of the Feingold contract states, in part: "As part of Basic Services, the Architect will coordinate the services of the Architect's consultants, including without limitation, all consultants listed in paragraph 1.1.3.5 [where Barry is expressly listed]."

Section 2.6.6.7 of the Feingold contract requires that the owner be named as an additional insured on all policies maintained by the Architect (including general liability) and states, in relevant part: "Architect shall assure that any and all consultants engaged or employed by Architect carry and maintain similar insurance with reasonably prudent limits and coverages in light of their services to be rendered by such consultants."

paragraph that Barry's services are *"for* the General Cable Mills Project in Williamstown, Massachusetts" (emphasis added). Regardless of the nature of their individual contractual agreements, Cable Mills as the owner, Feingold as a contractor, and Barry as a subcontractor each agreed and actively worked toward the common goal of completing Cable Mills's project. The exclusion here falls squarely within the analysis articulated in the Beckford decision.

2. *Privity requirement.* On a more fundamental level, Cable Mills challenges the applicability of the exclusion to a contracting party that does not stand in direct privity to the insured, alleging that the parties did not intend to cover all subcontractors and sub-subcontractors that are subsequently hired by the first-tier, independent contractors. No Massachusetts court has yet directly addressed the issue before us, namely, whether direct privity is required by the standard independent contractor exclusion within a general commercial liability contract. To determine whether the phrase "independent contractor" and "subcontractor" are mutually exclusive for the purposes of general commercial liability insurance, existing case law foreshadows our conclusion today that they are not.

a. *Scope of "independent contractor" and "subcontractor" terminology.* We turn first to the plain meaning of the terms "independent contractor" and "subcontractor" to determine the role of each in the underlying construction project.

"The essence of the distinction [between independent contractors and employees] under common law has always been the right to control the details of the performance, . . . and the freedom from supervision 'not only as to the result to be accomplished but also as to the means and methods that are to be utilized in the performance of the work.' " *Athol Daily News* v. *Board of Review of the Div. of Employment & Training*, 439 Mass. 171, 177 (2003), quoting from *Maniscalco* v. *Director of the Div. of Employment Sec.*, 327 Mass. 211, 212 (1951). See Restatement (Second) of Agency § 2 (1958) ("An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking. He may or may not be an agent"). An independent contractor is therefore "only responsible

for the accomplishment of an agreed result in an agreed manner." *Brigham's Case*, 348 Mass. 140, 141-142 (1964).[9] He neverthe-less maintains complete control over the task for which he contracted. In a similar vein, one who is hired in the role of subcontractor "is awarded a portion of an existing contract by a contractor, esp[ecially] a general contractor," Black's Law Dictionary 1560 (9th ed. 2009), and retains a large degree of discretion in how to execute the subcontracted work for which he is responsible. See Lewin & Schaub, Construction Law § 1:7 (2012).[10] Thus, when contrasted with the typical employer-employee relationship, independent contractors and subcontrac-tors fulfill roles comparable to when a general (independent) contractor is hired to oversee a construction project, and the general contractor in turn hires a subcontractor to perform a unique set of services in order to complete the job.[11] In this particular context, a subcontractor can, therefore, be viewed as an independent contractor, see *Nash* v. *Damson Oil Corp.*, 480 So. 2d 1095, 1100 (Miss. 1985), and a party to the contract is bound to accept the dual nature of said subcontractors.

  b. *Application to Feingold and Barry.* As laid out in the rec-

---

[9] We further note that, in carving out the unique role of the independent contractor in a construction setting, an employer is likewise not liable for the torts of an independent contractor unless the employer "retained some control over the manner in which the work was performed." *Herbert A. Sullivan, Inc.* v. *Utica Mut. Ins. Co.*, 439 Mass. 387, 407 (2003).

[10] This interpretation of subcontractor is consistent with the meaning given to said term by the United States Supreme Court in interpreting the Miller Act: "as established by usage in the building trades, a subcontractor is one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original contract." *Clifford F. MacEvoy Co.* v. *United States*, 322 U.S. 102, 108-109 (1944).

[11] To this end, we find persuasive authority in the language of G. L. c. 149, § 148B, as amended by St. 2004, c. 193, § 26, which distinguishes between employees and independent contractors based on three basic criteria, including the level of "control and direction [afforded the worker] in connection with the performance of the service"; whether the service is within the employer's scope of business; and whether the worker is "customarily engaged in an independently established trade, occupation, profession or business." Barry, who was "customarily engaged" as a structural engineer and retained by Fein-gold to perform structural engineering services related to the underlying construction project, an expertise that neither Cable Mills nor Feingold pos-sessed much less had the ability to supervise, is not an employee under this statute.

ord, Feingold and Barry assumed roles as independent contractors contributing to the Cable Mills project. Cable Mills expressly granted to Feingold the explicit authority to "manage the Architect's services and administer the Project," including coordinating the services of all consultants involved in the underlying project, but did not delegate any other responsibility to Feingold with regard to the project. Moreover, Cable Mills specifically relied on Feingold's unique architectural expertise, described by Cable Mills as "substantial experience in design work comparable to the Project," and it expected Feingold to "exercise all due professional care and diligence." It is clear from such language that Cable Mills did not intend to exercise control over architectural work.

In the proposal letter submitted by Barry to Feingold, Barry is afforded a similar degree of control with regard to structural engineering and limited duties with regard to the rest of the project. The proposal letter clearly sets out the scope of Barry's responsibilities for the project and also lists the services that will be performed by others, such as geotechnical and soil testing. In short, the plain terms of the business agreements describe services delegated to Feingold and Barry respectively as those to be performed by independent contractors. As such, subcontractors, or those not in direct privity to the insured party, such as Barry, as well as general contractors who are party to a direct contract, such as Feingold, qualify as independent contractors under the plain meaning of the exclusion.

3. *Failure to include "arising out of" language.* Cable Mills next argues that the failure by Lloyd's to use a more broadly worded exclusion should limit the scope of the exclusion and, thus, not apply to the injuries sustained by Barry. To this end, Cable Mills avers that the cases relied upon by the judge are inapplicable because the language utilized in the exclusions in those cases (precluding coverage for injury or damage "arising out of operations performed for any insured by independent contractors," see *U.S. Underwriters Ins. Co.* v. *Landau*, 679 F. Supp. 2d 330, 339 [E.D.N.Y. 2010]) is significantly broader than the language at issue here. The "arising out of" language has been found to be unambiguous and has withstood attacks to its validity. See *id.*, and cases cited. Cable Mills suggests that

because Lloyd's did not draft the exclusionary clause in the instant case using the phrase "arising out of," a phrase that signifies a requirement that the covered bodily injury would not have occurred "but for" the services rendered by the contracting party, the exclusion is inapplicable to subcontractors hired by independent contractors. See *id.* at 339-340. In other words, Cable Mills argues the exclusion does not apply to the harm endured by Barry, the subcontractor, because his injuries were not the direct result of activity "performed for" Cable Mills but, instead, were the result of an indirect relationship between him and Cable Mills. This contention misunderstands the central issue on appeal and is factually incorrect.

First, we take issue with Cable Mills's distinction between independent contractors and subcontractors. We have concluded, *supra*, that subcontractors qualify as independent contractors for the purposes of this policy.

Turning to the scope of the exclusion, Cable Mills asserts that the entire clause, "for operations performed for you," should be interpreted narrowly to apply only to those injuries sustained by independent contractors who are hired directly by and exclusively work "for" Cable Mills, an averment that confuses the causation requirements with the restricted scope of the underlying exclusion. We agree with Lloyd's in two separate respects: (1) there is no meaningful difference between "arising out of operations" and "for operations" with regard to services performed by Barry on the renovation project, and (2) the only reasonable interpretation of the phrase "for you" is to read the word "for" as describing the excluded services as those performed in furtherance of the construction project initiated by Cable Mills.

While Cable Mills insists that "arising out of" and "for" are legally distinct, we find any difference in meaning to be immaterial to the main issue in contention: whether the exclusion applies only to those contractors who are in direct privity with Cable Mills or whether the parties intended for it to apply to a broader class of contractors. "Under Massachusetts law, the phrase arising out of is generally understood to mean originating from, growing out of, flowing from, incident to, or having connection with." Certain Interested Underwriters at Lloyds

London *vs.* Stolberg, U.S. Dist. Ct. No. 09-CV-11279-NMG (D. Mass. Sept. 2, 2011) (Stolberg I) (quotations omitted).[12] Even if Lloyd's, in the exclusion in this case, had included the phrase "arising out of operations" in place of the phrase "for operations," at best creating a broader nexus between the covered injuries and their underlying actions, the parties would still disagree whether the exclusion should apply to Barry, because Barry was ultimately hired by Feingold and not Cable Mills. The entire clause, "for operations performed for you," addresses this relationship.

In fact, in the Stolberg I decision, a case heavily relied upon by Cable Mills, the court contemplated such an application of an exclusionary provision. The court held that the underlying claim for coverage, as related to a lawsuit brought by an employee of a subcontractor who sustained injuries that "arose from" operations performed by the subcontractor, fell "squarely within the Independent Contractors' Exclusion." *Id.* The policy provision at issue excluded coverage for injury "arising out of operations performed for you by said independent contractors." *Id.* The same operative phrase, "performed for you," is at issue in the present case, and we accept the reasoning in the Stolberg I decision, which reaffirms our earlier analysis that a party that qualifies as either an independent contractor, or an employee thereof, and performs services benefitting the insured party falls within the exclusion.[13]

*Judgment affirmed.*

---

[12]In *Massachusetts Property Ins. Underwriting Assn.* v. *Gallagher*, 75 Mass. App. Ct. 58, 60 (2009), we suggested that the phrase "arising out of" is broader than the concept of proximate cause under tort law. See *Certain Interested Underwriters at Lloyds, London* v. *Stolberg*, 680 F.3d 61, 67 (1st Cir. 2012) (*Stolberg II*) ("The Contractors Exclusion broadly excludes coverage for any claims — including those brought by members of the general public — arising out of the operations of independent contractors). The *Stolberg II* court found such broad language might also encompass a claim by a member of the public, whereas when the circumstances here are considered, such a broad view is unnecessary for the exclusion to apply, i.e., but for the operations performed, the injury would not have occurred; thus the application of the exclusion is not precluded.

[13]Finally, to the extent that Cable Mills claims the exclusion must be read

in context with other policy exclusions, we interpret the insurance policy to express a harmonious intention to exclude coverage for any injuries sustained by those individuals working on the project who ought to be covered by workers' compensation insurance policies. "Under Massachusetts Workers' Compensation law, an insured employer, such as [Cable Mills], who contracts to have work done by an uninsured independent contractor, may become liable to pay the workers' compensation claim of an injured employee of an independent contractor." See Stolberg I, *supra*. See also G. L. c. 152, § 18.